UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ABINGTON CREST NURSING AND<br>REHABILITATION CENTER<br>1267 South Hill Road<br>Erie, PA  16509,<br><br>ALDERCREST HEALTH AND<br>REHABILITATION CENTER<br>21400 72nd Avenue West<br>Edmonds, WA  98026,<br><br>BEAVER VALLEY NURSING AND<br>REHABILITATION CENTER<br>257 Georgetown Road<br>Beaver Falls, PA  15010,<br><br>BELAIR HEALTH AND<br>REHABILITATION CENTER<br>100 Little Road<br>Lower Burrell, PA  15068,<br><br>BROAD MOUNTAIN NURSING<br>AND REHABILITATION CENTER<br>500 West Laurel Street<br>Frackville, PA  17931,<br><br>CLAIRVIEW NURSING AND<br>REHABILITATION CENTER<br>CENTER<br>14663 Route 68<br>Sligo, PA  16255,<br><br>DALWORTH CARE CENTER<br>405 Duncan Perry Road<br>Arlington, TX 76011<br><br>DRESHER HILL HEALTH AND<br>REHABILITATION CENTER<br>1390 Camp Hill Road<br>Dresher, PA  19034, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Civil Action No. _____<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

| | |
|---|---|
| EDGEWOOD NURSING CENTER<br>East Main Street<br>Youngstown, PA  15696, | )<br>)<br>)<br>)<br>) |
| ELK HAVEN NURSING HOME<br>785 Johnsonburg Road<br>St. Marys, PA  15857, | )<br>)<br>)<br>) |
| EVERGREEN NURSING AND<br>REHABILITATION CENTER<br>430 North Lilly Road<br>Olympia, WA  98506, | )<br>)<br>)<br>)<br>) |
| FRANKLIN HILLS HEALTH AND<br>REHABILITATION CENTER<br>6021 North Lidgerwood<br>Spokane, WA  99207, | )<br>)<br>)<br>)<br>) |
| HAVENCREST NURSING CENTER<br>1277 Country Club Road<br>Monongahela, PA  15063, | )<br>)<br>)<br>) |
| KITTITAS VALLEY HEALTH AND<br>REHABILITATION CENTER<br>1050 East Mountain View<br>Ellensburg, WA  99207, | )<br>)<br>)<br>)<br>) |
| MEADOWCREST NURSING CENTER<br>1200 Braun Road<br>Bethel Park, PA  15102, | )<br>)<br>)<br>) |
| MOUNTAIN LAUREL NURSING<br>AND REHABILITATION CENTER<br>700 Leonard Street<br>Clearfield, PA  16830, | )<br>)<br>)<br>)<br>) |
| PACIFIC SPECIALTY AND<br>REHABILITATIVE CARE<br>1015 North Garrison Avenue<br>Vancouver, WA  98664, | )<br>)<br>)<br>)<br>) |
| SOUTHCREST SUBACUTE &<br>SPECIALTY CARE CENTER<br>110 West Cliff Drive<br>Spokane, WA 99204 | )<br>)<br>)<br>) |



| | |
|---|---|
| STONEBRIDGE HEALTH AND REHABILITATION CENTER<br>102 Chandra Drive<br>Duncannon, PA  17020, | )<br>)<br>)<br>)<br>) |
| TREMONT HEALTH AND REHABILITATION CENTER<br>44 Donaldson Road<br>Tremont, PA  17981 | )<br>)<br>)<br>) |
| and | ) |
| VALLEY MANOR NURSING AND REHABILITATION CENTER<br>7650 Route 309<br>Coopersburg, PA  18036 | )<br>)<br>)<br>) |
| Plaintiffs, | ) |
| v. | ) |
| MICHAEL O. LEAVITT<br>Secretary, United States Department of Health & Human Services<br>200 Independence Avenue, S.W.<br>Washington, D.C.  20201, | )<br>)<br>)<br>)<br>) |
| Defendant. | ) |

## COMPLAINT

Plaintiffs sue the Defendant and allege as follows:

## **JURISDICTION**

1.     This action arises under the Medicare Act, as amended, 42 U.S.C. § 1395 *et seq.*, and is brought pursuant to the Administrative Procedures Act, as amended, 5 U.S.C. § 702 *et seq.*, to review a final administrative action of the Secretary of the United States Department of Health and Human Services, in connection with his administration of the federal program of

health insurance for the aged (hereinafter referred to as the "Medicare program"), 42 U.S.C. § 1395 *et seq.*

2. This Court has jurisdiction of the subject matter herein pursuant to 42 U.S.C. § 1395oo(f)(1).

3. This District is the proper venue for this action pursuant to 42 U.S.C. § 1395oo(f)(1).

## PARTIES

4. At all times mentioned herein, each of the Plaintiffs was licensed in and by their respective States to operate a skilled nursing facility ("SNF"). In addition, each of the Plaintiffs was a fully qualified and certified provider of SNF services under the Medicare program, pursuant to 42 U.S.C. §§ 1395i-3 and 1395cc. Each of the Plaintiffs are adversely affected and aggrieved by the Defendant's final administrative action complained of herein. The Plaintiffs are identified as follows:

   a. Abington Crest Nursing and Rehabilitation Center, Medicare Provider No. 39-5174, with its principal place of business at 1267 South Hill Road, Erie, PA 16509.

   b. Aldercrest Health and Rehabilitation Center, Medicare Provider No. 50-5236, with its principal place of business at 21400 72nd Avenue West, Edmonds, WA 98026.

   c. Beaver Valley Nursing and Rehabilitation Center, Medicare Provider No. 39-5266, with its principal place of business at 257 Georgetown Road, Beaver Falls, PA 15010.

   d. Belair Health and Rehabilitation Center, Medicare Provider No. 39-5208, with its principal place of business at 100 Little Road, Lower Burrell, PA 15068.

e. Broad Mountain Nursing and Rehabilitation Center, Medicare Provider No. 39-5286, with its principal place of business at 500 West Laurel Street, Frackville, PA 17931.

f. Clairview Nursing and Rehabilitation Center, Medicare Provider No. 39-5458, with its principal place of business at 14663 Route 68, Sligo, PA 16255.

g. Dalworth Care Center, Medicare Provider No. 45-5872, with its principal place of business at 405 Duncan Perry Road, Arlington, TX 76011.

h. Dresher Hill Health and Rehabilitation Center, Medicare Provider No. 39-5509, with its principal place of business at 1390 Camp Hill Road, Dresher, PA 19034.

i. Edgewood Nursing Center, Medicare Provider No. 39-5892, with its principal place of business at East Main Street, Youngstown, PA 15696.

j. Elk Haven Nursing Home, Medicare Provider No. 39-5341, with its principal place of business at 785 Johnsonburg Road, St. Marys, PA 15857.

k. Evergreen Nursing and Rehabilitation Center, Medicare Provider No. 50-5243, with its principal place of business at 430 North Lilly Road, Olympia, WA 98506.

l. Franklin Hills Health and Rehabilitation Center, Medicare Provider No. 50-5024, with its principal place of business at 6021 North Lidgerwood, Spokane, WA 99207.

m. Havencrest Nursing Center, Medicare Provider No. 39-5633, with its principal place of business at 1277 Country Club Road, Monongahela, PA 15063.

n. Kittitas Valley Health and Rehabilitation Center, Medicare Provider No. 50-5263, with its principal place of business at 1050 East Mountain View, Ellensburg, WA 99207.

o. Meadowcrest Nursing Center, Medicare Provider No. 39-5698, with its principal place of business at 1200 Braun Road, Bethel Park, PA 15102.

p. Mountain Laurel Nursing and Rehabilitation Center, Medicare Provider No. 39-5331, with its principal place of business at 700 Leonard Street, Clearfield PA 16830.

q. Pacific Specialty and Rehabilitative Care, Medicare Provider No. 50-5269, with its principal place of business at 1015 North Garrison Avenue, Vancouver, WA 98664.

r. Southcrest Subacute & Specialty Care Center, Medicare Provider No. 50-5207, with its principal place of business at 110 West Cliff Drive, Spokane, WA 99204.

s. Stonebridge Health and Rehabilitation Center, Medicare Provider No. 39-5785, with its principal place of business at 102 Chandra Drive, Duncannon, PA 17020.

t. Tremont Health and Rehabilitation Center, Medicare Provider No. 39-5499, with its principal place of business at 44 Donaldson Road, Tremont, PA 17981.

u. Valley Manor Nursing and Rehabilitation Center, Medicare Provider No. 39-5167, with its principal place of business at 7650 Route 309, Coopersburg, PA 18036.

5. The Defendant, Michael O. Leavitt, is the Secretary of the Department of Health and Human Services of the United States of America ("Secretary"). As such, he is responsible for the administration of the Medicare program under the Medicare Act, 42 U.S.C. § 1395 *et seq*. The Secretary has issued numerous regulations pursuant thereto which, as they relate to provider reimbursement, are found in part at 42 C.F.R. Parts 412 and 413. The Secretary, through his designated agent, the Deputy Administrator of the Centers for Medicare & Medicaid Services, has made a final administrative decision, wherein he denied the Plaintiffs' claims to Medicare reimbursement of bad debts Plaintiffs incurred as a result of rendering services to Medicare

beneficiaries who were dually eligible for federal Medical Assistance ("MA" or "Medicaid") benefits at the time services were rendered. The bad debt claims are comprised of uncollected deductibles and coinsurance amounts due and owing to Plaintiffs for Medicare covered services that were subject to payment under the Medicare program's Part B fee schedule. The Plaintiffs could not collect the deductible coinsurance amounts because of the terms of the State Plans for Medical Assistance in effect in the patients' States of residence at the time the services were rendered. The Plaintiffs received the Secretary's final administrative decision on September, 18, 2006.

## FACTUAL BACKGROUND

6.  The Plaintiffs provide, *inter alia,* physical, occupational and speech therapy services ("therapy services") to residents who require such services, as determined by their physicians and required by their plans of care. For those residents who have insurance coverage provided by the Medicare program, some of these therapy services are subject to payment under Parts A and B of the Medicare program.

## SNF MEDICARE REIMBURSEMENT PRIOR TO ENACTMENT OF BALANCED BUDGET ACT OF 1997

7.  Prior to the enactment of the Balanced Budget Act of 1997, Pub. L. No. 105-33, § 4432, 111 Stat. 251, 414, the Plaintiffs obtained reimbursement for services provided to residents eligible for Medicare under a reasonable cost-based system. Under that system, the Plaintiffs submitted claims to United Government Services, LLC, their fiscal intermediary ("UGS" or "Intermediary"), which would then reimburse the Plaintiffs the lesser of: (1) their charges; or (2) the reasonable costs for services, less any applicable deductibles and coinsurance

that remained the residents' responsibility under the Medicare program. The Plaintiffs would then seek payment for those deductibles and coinsurance amounts from the residents.

8. The Medicare program has long recognized, however, that some indigent individuals qualify for both Medicare and Medicaid program benefits. Such individuals, who are referred to as "dually eligible," have Medicare as their primary insurance coverage for SNF services, and their Medicare deductibles and coinsurance are then paid by the Medicaid program operated by the States in which the residents reside.

9. However, some States' Medicaid programs, including the states of Pennsylvania and Washington, where 20 of the 21 Plaintiffs in this action are located, statutorily prohibit MA payment of the deductibles and coinsurance of Medicare beneficiaries in some circumstances. These States also prohibit Medicare providers, including the Plaintiffs, from seeking these payments from the individual residents who qualify for MA under their respective Medicaid State Plans.

10. Thus, for such patients, the Plaintiffs could not collect the Medicare program mandated deductibles and coinsurance amounts from the State MA programs or from the dually eligible residents.

11. Since its inception, the Medicare program has recognized that the lost revenue associated with uncollected deductibles and coinsurance attributable to dually eligible patients in the States wherein the provisions of the MA program prohibit payment by either the State or the individual resident should be reimbursed by the Medicare Program. Thus, Plaintiffs were permitted to claim the uncollectible deductibles and coinsurance attributable to such residents for both Part A and Part B services as bad debts on their Medicare cost reports and obtain Medicare reimbursement.

12.  Pursuant to 42 C.F.R. § 413.80, bad debts that are attributable to uncollected Medicare deductibles and coinsurance amounts are reimbursable on providers' Medicare cost reports. Similarly, the *Provider Reimbursement Manual* ("*PRM*") provides that any portion of such deductible or coinsurance amounts that a State MA program is not obligated to pay can be included as a bad debt on providers' Medicare cost reports.

13.  Thus, the Plaintiffs claimed the unpaid deductibles and coinsurance amounts for both Part A and Part B covered services rendered to dually eligible residents on their pre-FY 1999 Medicare cost reports, and their Intermediary routinely reimbursed these claims without controversy.

### SNF MEDICARE REIMBURSEMENT FOLLOWING ENACTMENT OF BALANCED BUDGET ACT OF 1997

14.  However, beginning with cost reporting periods commencing after July 1, 1998, Congress mandated that the Medicare program shift its reimbursement system for Part A covered services SNFs rendered from a cost based system to a prospective payment system ("PPS"). These changes were adopted as part of the Balanced Budget Act of 1997, Pub. L. No. 105-33, § 4432, 111 Stat. 251, 414.

15.  Along with the implementation of PPS for SNF admissions covered by Part A, Congress provided that therapy services SNFs provided would be reimbursed under the Medicare Part B fee schedule, if the Medicare eligible patient was not in a covered Part A stay at the time therapy services were rendered. Id. at 421.

16.  Under the new reimbursement system for SNF services, the patient remained responsible for payment of deductibles and coinsurance for both Part A and Part B services, just as before. Thus, for some services rendered to dually eligible residents who received therapy

services subject to payment under the Part B fee schedule, the Plaintiffs continued to be unable to collect those deductibles and coinsurance, either from some States' MA programs or from the residents, due to the States' MA Plans statutory limitations.

17. Accordingly, the Plaintiffs continued to report the uncollectible deductibles and coinsurance related to both Part A and Part B services as bad debts on their Medicare cost reports for the fiscal year ending December 31, 1999 ("FY 1999").

18. When Congress enacted the changes to the reimbursement methodology for SNF services in the Balanced Budget Act of 1997, it did not impose any limitation on SNFs' rights to obtain Medicare reimbursement for bad debts related to services rendered to Medicare beneficiaries covered under either Part A or Part B of the Medicare program.

19. In contrast, in the Balanced Budget Act of 1997, Congress did limit the rights of other types of Medicare providers to collect bad debt reimbursement. For instance, Congress reduced the amount of bad debt payments hospitals could collect. Id. at 425.

20. Similarly, the Secretary did not adopt any change to the governing bad debt regulation, 42 C.F.R. § 413.80, which would have limited SNFs' rights to obtain reimbursement of their bad debts attributable to Medicare beneficiaries related to services payable under the Medicare Part B fee schedule. The Secretary did, however, amend 42 C.F.R. § 413.80 to limit the bad debt reimbursement paid to hospitals, pursuant to the Congressional mandate. 63 Fed. Reg. 40,953, 41,005 (July 31, 1998).

21. Almost five years later, the Secretary published a Notice of Proposed Rulemaking wherein he announced a proposed rule that would serve to, *inter alia*, eliminate bad debt claims arising from services that were payable under the Medicare Part B fee schedule. 68 Fed. Reg.

6682, 6683-87 (Feb. 10, 2003). Significantly, however, the Secretary's proposed rule has never been finalized.

22.     More recently, Congress has adopted legislation to limit certain bad debt claims by SNFs. Specifically, in the Deficit Reduction Act of 2005, Congress amended the Medicare Act to limit SNFs' bad debt reimbursement arising from individuals entitled to benefits under Medicare Part A, but Congress specifically exempted individuals who were dually eligible for Medicare and Medicaid from this bad debt limitation. Deficit Reduction Act of 2005, Pub. L. No. 109-171, § 5004, 120 Stat. 4, 32. The Congressional enactment limiting certain bad debt reimbursement claims by SNFs is effective for cost reporting periods beginning on or after October 1, 2005 and, therefore, does not limit Plaintiffs' rights to reimbursement in the instant case.

## FACTUAL BACKGROUND

23.     The Plaintiffs claimed reimbursement of the bad debts related to unpaid deductibles and coinsurance for services rendered to dually eligible patients payable under the Part B fee schedule on their 1999 Medicare cost reports that were filed with their Intermediary.

24.     However, when the Intermediary audited the Plaintiffs' FY 1999 Medicare cost reports, it allowed the Plaintiffs' bad debt claims for services covered under Part A, but it disallowed the bad debt claims for services rendered to dually eligible residents that were subject to payment under the Medicare Part B fee schedule.

25.     The Intermediary issued each of the Plaintiffs a Notice of Program Reimbursement on or around September 26, 2001, wherein it, *inter alia*, disallowed the Part B bad debt claims Plaintiffs had included on their Medicare cost reports for services rendered to

11

dually eligible residents, and for which the Plaintiffs were unable to collect the Medicare program mandated deductibles and coinsurance from the State MA programs in which the residents resided or from the residents themselves, pursuant to the MA program requirements of the residents' respective States of residence.

26. Thereafter, on or around March 12, 2002, each of the Plaintiffs filed an individual appeal with the Provider Reimbursement Review Board ("PRRB"), within 180 days from the date each Plaintiff received its Notice of Program Reimbursement from the Intermediary.

27. Although some of the Plaintiffs raised additional issues at the time the individual appeals were filed with the PRRB, these were administratively resolved by virtue of a letter Plaintiffs submitted to the PRRB on or around September 19, 2002.

28. The Plaintiffs requested that the PRRB permit them to pursue the Part B bad debt issue as a group appeal, pursuant to the Board's procedures, and the PRRB granted their request by letter dated October 3, 2002.

29. Following the Plaintiffs' submission of the necessary jurisdictional documents on or around October 23, 2002, the Intermediary stipulated that there were no jurisdictional impediments to the Board's review of the Plaintiffs' claims. The Intermediary's acknowledgement of the Board's jurisdiction to consider the Part B bad debt issue the Plaintiffs have asserted was submitted to the PRRB on or around October 30, 2002.

30. While the Plaintiffs' group appeal was pending before the PRRB, the Plaintiffs and the Intermediary entered into a Stipulation and Partial Administrative Resolution that was filed with the PRRB on or around January 26, 2005. The Stipulation and Partial Administrative

Resolution the Plaintiffs and the Intermediary agreed upon was negotiated and submitted in accordance with 42 C.F.R. § 405.1853.

31. Following the Plaintiffs' and Intermediary's submission of the Stipulation and Partial Administrative Resolution, the PRRB conducted a hearing on the Part B bad debt issue. The hearing was conducted on February 3, 2005.

32. Following the hearing, the PRRB issued a decision on the Part B bad debt issue on July 21, 2006 (PRRB Decision 2006-D36), wherein it determined that the Intermediary's adjustments disallowing the Plaintiffs' claims for reimbursement of uncollectible deductibles and coinsurance arising from therapy services paid under Medicare Part B fee schedule were improper.

33. Following the PRRB's issuance of the decision upholding the Plaintiffs' position regarding their right to reimbursement of the bad debts they had incurred as a result of services rendered to Medicare beneficiaries, the Secretary, acting through his designated agent, issued a final administrative decision wherein he reversed the PRRB's decision. The Plaintiffs received the Secretary's final administrative decision on September 18, 2006. Therein, the Secretary denied the Plaintiffs' claim that they were entitled to reimbursement of the bad debts they had incurred as a result of services rendered to dually eligible Medicare beneficiaries that were subject to payment under the Medicare Part B fee schedule during their fiscal years ending December 31, 1999.

## **CLAIM I**

The Secretary's final administrative decision is arbitrary and capricious, an abuse of discretion, and it is not in accordance with the governing law, specifically, the governing

provisions of the Medicare Act. Accordingly, the Secretary's final administrative action constitutes a violation of 5 U.S.C. § 706(2)(A).

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment: (1) reversing the Secretary's final administrative determination and directing the Secretary and his designated agents to reimburse the Plaintiffs for the bad debts they incurred as a result of the services rendered to dually eligible Medicare beneficiaries that were paid under the Medicare Part B fee schedule; (2) awarding the Plaintiffs interest on the unpaid Medicare reimbursement pursuant 42 U.S.C. § 1395oo(f)(2); and (3) awarding the Plaintiffs their costs and disbursements in this action.

Dated at Washington, D.C. this 13th day of November, 2006.

_____
John R. Jacob
D.C. Bar No. 444412
AKIN GUMP STRAUSS HAUER & FELD LLP
Robert S. Strauss Building
1333 New Hampshire Avenue, NW
Washington, D.C. 20036
Telephone: 202-887-4582
Fax: 202-955-7648
Email: jjacob@akingump.com

**OF COUNSEL:**

Daniel F. Miller
Barbara J. Janaszek
WHYTE HIRSCHBOECK DUDEK S.C.
555 East Wells Street
Suite 1900
Milwaukee, WI 53202
Telephone: 414-273-2100
Fax: 414-223-5000
Email: bjanaszek@whdlaw.com
Email: dmiller@whdlaw.com

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

**I (a) PLAINTIFFS**

Abington Crest Nursing and Rehabilitation Center, et al.

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF** 88888
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**

John R. Jacob, Esq.
Akin Gump Strauss Hauer & Feld LLP
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036
200.887.4582

**DEFENDANTS**

Michael O. Leavitt, Secretary, United States Department of Health & Human Services

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

CASE NUMBER 1:06CV01932
JUDGE: John D. Bates
DECK TYPE: Administrative Agency Review
DATE STAMP: 11/13/2006

**II. BASIS OF JURISDICTION** (PLACE AN x IN ONE BOX ONLY)

- ○ 1 U.S. Government Plaintiff
- ● 2 U.S. Government Defendant
- ○ 3 Federal Question (U.S. Government Not a Party)
- ○ 4 Diversity (Indicate Citizenship of Parties in item III)

**III CITIZENSHIP OF PRINCIPAL PARTIES** (FOR PLAINTIFF...)

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

**IV. CASE ASSIGNMENT AND NATURE OF SUIT**
(Place a X in one category, A-N, that best represents your cause of action and **one** in a corresponding Nature of Suit)

**○ A. Antitrust**
- ☐ 410 Antitrust

**○ B. Personal Injury/Malpractice**
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Medical Malpractice
- ☐ 365 Product Liability
- ☐ 368 Asbestos Product Liability

**● C. Administrative Agency Review**
- ☒ 151 Medicare Act

Social Security:
- ☐ 861 HIA ((1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g)
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g)

Other Statutes
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

**○ D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

**○ E. General Civil (Other)**    OR    **○ F. Pro Se General Civil**

Real Property
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent, Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

Personal Property
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

Bankruptcy
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

Prisoner Petitions
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

Property Rights
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

Federal Tax Suits
- ☐ 870 Taxes (US plaintiff or defendant
- ☐ 871 IRS-Third Party 26 USC 7609

Forfeiture/Penalty
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 RR & Truck
- ☐ 650 Airline Regs
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

Other Statutes
- ☐ 400 State Reapportionment
- ☐ 430 Banks & Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation

- ☐ 470 Racketeer Influenced & Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Satellite TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 900 Appeal of fee determination under equal access to Justice
- ☐ 950 Constitutionality of State Statutes
- ☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ G. *Habeas Corpus/ 2255*<br><br>☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ○ H. *Employment Discrimination*<br><br>☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ○ I. *FOIA/PRIVACY ACT*<br><br>☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ○ J. *Student Loan*<br><br>☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |
|---|---|---|---|
| ○ K. *Labor/ERISA (non-employment)*<br><br>☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ○ L. *Other Civil Rights (non-employment)*<br><br>☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ○ M. *Contract*<br><br>☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ○ N. *Three-Judge Court*<br><br>☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**
- ⦿ 1 Original Proceeding
- ○ 2 Removed from State Court
- ○ 3 Remanded from Appellate Court
- ○ 4 Reinstated or Reopened
- ○ 5 Transferred from another district (specify)
- ○ 6 Multi district Litigation
- ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
Action under 42 USC Sec. 1395 et seq. and 5 USC Sec. 702 et seq., to review a final administrative action of the Secretary of HHS re the disallowance of Medicare bad debts.

**VII. REQUESTED IN COMPLAINT**  CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 ☐   DEMAND $ declaratory&injunctive   Check YES only if demanded in complaint
JURY DEMAND: YES ☐  NO ☒

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   YES ☐   NO ☒   If yes, please complete related case form.

DATE 11/13/06    SIGNATURE OF ATTORNEY OF RECORD  [signature]

INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.  CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.  CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.  CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.